# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **BRENDA JOYCE MATHEWS** § | |
| § | |
| v. § | **CIVIL ACTION NO. 4:16cv916-KPJ** |
| § | |
| **COMMISSIONER, SOCIAL SECURITY** § | |
| **ADMINISTRATION.** § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brenda Joyce Mathews ("Plaintiff") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the parties' consent to proceed before the magistrate judge (Dkt. 12), this case has been transferred to the undersigned for all proceedings and entry of judgment. *See* Dkt. 13. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

On December 18, 2013, Plaintiff filed an application for DIB and SSI under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 416(i), 423, 1382c, alleging a disability onset date of March 1, 2013, due to arthritis, fibromyalgia, depression, anxiety, heart problems, high blood pressure, and "numbness in extremities." Transcript ("Tr.") at 16, 195-196, 212. An Administrative Law Judge ("ALJ") held a hearing regarding Plaintiff's applications on June 30, 2015, which was attended by Plaintiff and her non-attorney representative. A vocational expert ("VE") and two medical experts ("ME") also appeared and testified. Tr. at 34-61.

On August 12, 2015, the ALJ issued a decision (the "ALJ Decision") concluding that Plaintiff was not disabled for purposes of the Act. Tr. at 10-33. After considering the evidence and testimony, the ALJ found that Plaintiff's morbid obesity; bilateral knee arthritis; status post bilateral total knee replacement; early degenerative arthritis in bilateral hands; history of high blood pressure; sleep apnea; flat foot deformity; depression; and situational anxiety qualified as severe impairments under the Act, but concluded that Plaintiff's impairments or combination of impairments (severe or non-severe) did not meet or medically equal one of the impairments listed in the regulations for presumptive disability. Tr. at 18-20; 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Tr. at 19-20.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") for a full range of sedentary work as defined under 20 C.F.R. §§ 404.1567(a), 416.967(a), along with no complex instructions or complex judgments; no complex tasks; and no lengthy complex social interaction involving complex judgments. Tr. at 20-21. Based on testimony from the VE and Plaintiff's descriptions of her past jobs, the ALJ determined that Plaintiff could perform her past relevant work of customer service representative (sedentary and semi-skilled, SVP 4) as actually and generally performed. Tr. at 27-28. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. Tr. at 28.

On October 5, 2016, the Appeals Council denied Plaintiff's request for review. Tr. at 1-5. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 42 U.S.C. § 405(g). Plaintiff then filed the instant action for review by this Court.

## II. LEGAL STANDARD

Title II provides for federal disability insurance benefits while Title XVI provides for supplemental security income for the disabled. Judicial review of the denial of disability benefits under Section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996).

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. App'x 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.; see Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at step one whether the claimant is currently engaged in substantial gainful activity. At step two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to step four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at step four, the Commissioner must determine whether the claimant's impairments are severe enough to prevent him from performing his past relevant work. Finally, at step five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 416.920(b)-(f) and 404.1520(b)(1)(f). An affirmative answer at step one or a negative answer at steps two, four, or five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at step three, or an affirmative answer at steps four and five, creates a presumption of disability. *Id*.

The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five if the claimant shows she cannot perform her past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (*per curiam*).

## III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ Decision made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018;

2. The claimant has not engaged in substantial gainful activity since March 1, 2013, the alleged onset disability date (20 C.F.R. § 404.1571 *et seq*.);

3. The claimant has the following severe impairments: morbid obesity (BMI 43-46); bilateral knee arthritis; status post bilateral total knee replacement; early degenerative arthritis in bilateral hands; history of high blood pressure; sleep apnea; flat foot deformity; depression; and situational anxiety (20 C.F.R. 404.152(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R 404.1520(d), 404.1525, 404.1526, 16.920(d), 416.925, and 416.926);

5. The claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R 404.1567(a) and 416.967(a), which includes lifting and carrying up to 10 pounds occasionally and less than ten pounds frequently; sitting up to 6 hours in an 8-hour workday; standing and/or walking 2 hours; unlimited pushing and pulling; all postural movements occasionally; no complex instruction or complex judgment; no complex tasks; and no lengthy complex social interaction involving complex judgments;

6. The claimant is capable of performing past relevant work as a customer service clerk, Dictionary of Occupational Titles ("DOT") 249.32-022, semi-skilled, specific vocational preparation ("SVP") 4, sedentary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (C.F.R. 404.1565 and 416.965); and

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2013, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f).

Tr. at 18-28.

The ALJ determined that Plaintiff is not disabled under Sections 216(i) and 223(d) of the Social Security Act. *Id*. at 28.

## IV. ANALYSIS

Plaintiff raises the following issues on appeal: (1) The ALJ's denial at step 4 is not supported by substantial evidence because it is based on a job that Plaintiff never actually performed, and because the ALJ did not present a hypothetical to the VE that matched his ultimate RFC finding; and (2) the ALJ erred in his credibility finding because he failed to consider Plaintiff's long work history and difficulty obtaining treatment. *See* Dkt. 17 at 1.

### A. RESIDUAL FUNCTIONAL CAPACITY AND PAST RELEVANT WORK

Plaintiff first argues the ALJ Decision is not supported by substantial evidence because the ALJ's finding that Plaintiff could perform the position of "customer service clerk, DOT 249.362-022, semi-skilled, SVP 4, sedentary" conflicts with the actual description of the position in the DOT. Plaintiff asserts the DOT number provided by the ALJ corresponds to a job called "mortgage loan processor" and the requirements of this position, including a SVP level of 5, exceed the limitations set forth in the ALJ's RFC finding.

The Commissioner concedes that due to "a scrivener's error," the ALJ Decision erroneously states Plaintiff's past relevant work is located under DOT job code 249.362-022, which is a job titled "mortgage loan processor." Instead Plaintiff's past relevant work should reference DOT job code 249.362-026, "order clerk." *See* Dkt. 17 at 6 (citing Tr. at 27, 59). The Commissioner notes the Agency had previously determined Plaintiff's past relevant work as a telemarketer performed from 2008 through 2011, fell under DOT job code 249.362-026, correctly identifying it as an "order clerk." *See id.* (citing Tr. at 98-99). The Commissioner argues that because the record establishes the "order clerk" position (a sedentary job with SVP 4) is consistent with the information contained in the "order clerk" DOT job code (249.362-026), and with the VE testimony, as well as with Plaintiff's description of her past relevant

7

work, substantial evidence establishes that Plaintiff could return to this work as it is generally performed. *See id*. at 6-7; Tr. 28, 59, 99. The Court agrees.

The relevant inquiry here is whether Plaintiff could return to her past relevant work. At step four in the sequential evaluation process, Plaintiff has the burden of demonstrating that she is unable to perform her past relevant work. *See Villa*, 895 F.2d at 1023. Plaintiff is the primary source for vocational documentation, and Plaintiff's statements regarding her past work are generally sufficient for determining the demands of such work. *See* Social Security Rulings ("SSR") 82-61 and 82-62. The burden of showing that an error is harmful falls on the party attacking the Commissioner's decision. *See Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009).

As explained above, the Commissioner concedes this was "a scrivener's error." The Court notes that the "scrivener's error" here involves only the recitation of the DOT position number, *not* the description of the position. *See* Tr. at 27. The accompanying text makes clear that the ALJ described the proper job classification of "customer service clerk, . . . semi-skilled, SVP 4, sedentary." Tr. at 27. Notably, Plaintiff does not argue that she is unable to perform her past relevant work as a customer service representative/telemarketing as the ALJ determined. Plaintiff merely complains that the "mortgage loan processor" position number recited in the ALJ Decision exceeds her RFC limitations. In light of the entirety of the record, Plaintiff's argument is disingenuous.

A review of the record establishes that the ALJ considered and relied on Plaintiff's own description of her past relevant work as a telemarketer/customer service representative, as well as on the VE's testimony regarding requirements of the "customer service clerk" job. *See, e.g.*, Tr. at 27-28. During the administrative hearing, Plaintiff testified that her employer was a telemarketing company, her job title was "customer service representative," and the job

8

involved "basically sitting down" with "no lifting." Tr. at 42-43. Plaintiff also testified that she worked as a telemarketer/customer service representative from May 2008 through August 2011. Tr. at 43. Plaintiff described her usual workday as sitting for 7 hours, standing and walking for 1 hour, and "no lifting except phone." Tr. at 232. Plaintiff also reported she spent "all day on phone and typing" and spent her time "answer[ing] phones, mak[ing] sales, talk[ing] about products and phone bills." *Id*.

The ALJ determined Plaintiff has the RFC to perform "sedentary work," except that she must perform work that involves no complex instructions or complex judgments; no complex tasks; and no length complex social interaction involving complex judgments. Tr. at 20-27. Sedentary work is defined as work that, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. As the regulations explain, "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id*.

The final responsibility for the determination of an individual's residual functional capacity, the determination of whether an individual's residual functional capacity prevents her from doing past relevant work, and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner pursuant to Social Security Ruling 96-5p and 20 C.F.R. §§ 404.1527 and 416.927. *Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989). There is nothing in the record here—neither medical evidence, nor Plaintiff's own statements—establishing that Plaintiff is precluded or prevented from performing the residual functional capacity assessed by the ALJ. *See Villa*, 895 F.2d at 1027.

Considering Plaintiff's description of her past relevant work along with other evidence in the record establishing Plaintiff's RFC was evaluated against the correct job classification, the Court finds substantial evidence in the record to support the ALJ's finding that Plaintiff has the RFC to return to her past relevant work. Accordingly, the Court finds no error as to the ALJ's ultimate conclusion.

Plaintiff also argues that the ALJ did not present an appropriate hypothetical to the VE. *See* Dkt. 17 at 9. Specifically, Plaintiff argues the hypothetical posed by the ALJ failed to include Plaintiff's RFC limitation of "no complex instructions or complex judgments; no complex tasks; and no lengthy complex social interaction, involving complex judgments." *See* Dkt. 17 at 9 (citing Tr. at 21). However, the ALJ need not rely on the VE's testimony to make a proper step four finding. A step four determination may rest on descriptions of past work as actually performed or as generally performed in the national economy, and the ALJ may take notice of job data in the DOT. *See Villa*, 895 F.2d at 1022; *see also Jones v. Bowen*, 829 F.2d 524, 527 n.2 (5th Cir. 1987) ("[The step four] determination may rest on descriptions of past work as actually performed or as generally performed in the national economy."). Here, the ALJ found that Plaintiff could return to her telemarketing customer service representative job as actually and generally performed. *See* Tr. at 27-28.

Based on the foregoing, the Court finds no basis to reverse the Commissioner's decision in order to rectify a minor clerical error. The Court concludes that in light of Plaintiff's testimony, the VE's testimony, and DOT Occupational Code 249.362-022, there is substantial evidence to support the ALJ's determination that Plaintiff has the RFC to return to her past relevant work, and therefore, is not disabled at step four. Accordingly, the Court finds no error in the ALJ Decision.

## B. THE ALJ'S CREDIBILITY FINDING

Plaintiff's next point of error is that the ALJ erred in his credibility finding because he failed to consider Plaintiff's long work history and difficulty obtaining treatment. *See* Dkt. 17 at 13. Having scrutinized the record, the Court finds the ALJ's credibility determination is supported by substantial evidence. *See Villa*, 895 F.2d at 1022 (the ALJ's credibility evaluation is entitled to judicial deference if supported by substantial evidence). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Plaintiff fails to point to any conspicuous absence of credible choices or contrary medical evidence. As explained further below, the Court finds Plaintiff has not shown the ALJ committed reversible error with respect to his credibility finding.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment. *See* Tr. at 21-22, 24-26. The ALJ's credibility analysis demonstrates that he considered the factors he was required to consider under Sections 404.1529(c)(3) and 416.929(c)(3). *Id.* The ALJ evaluated Plaintiff's subjective complaints, but ultimately determined the objective medical evidence did not substantiate Plaintiff's allegations of disability. Tr. at 18. The ALJ identified inconsistencies in the record between the objective medical evidence and Plaintiff's allegations of a complete inability to work. Tr. at 24-26. The ALJ may discount a claimant's subjective complaints if there are inconsistencies between the claimant's allegations and the evidence as a whole. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Falco*, 27 F.3d at 164 (the ALJ is not required to accept subjective complaints over the objective medical evidence). Subjective complaints must be corroborated by objective

medical evidence and need not take precedence over objective evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001); *Villa*, 895 F.2d at 1024.

SSR 16-3p provides, "In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p (S.S.A. Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (providing that consistency with objective medical evidence and other evidence is relevant to determine a claimant's diminished capacity for basic work activities). As discussed above, the objective medical evidence did not support Plaintiff's allegation of complete disability.

The ALJ provided several reasons for discounting Plaintiff's credibility, and pointed out that the totality of the medical evidence showed she could still perform sedentary work. Tr. at 25. For example, on May 20, 2011, Plaintiff denied any pain (Tr. at 355), and on August 8, 2011, Plaintiff complained of "weakness," but only rated her pain as a 3 out of 10 (Tr. at 352). On December 10, 2013, Plaintiff presented to the Emergency Department at Paris Regional Medical Center complaining of a fever and headache, but many of her medications had been prescribed years earlier and indicated no active refills. Tr. at 338-339. She further exhibited normal gait, no motor or sensory deficit, and was in no apparent distress. Tr. at 340. Plaintiff received instructions to take her blood pressure medication, after she admitted to failing to take it on time. Tr. at 341, 346.

On January 23, 2012, Plaintiff underwent an internal medicine consultative evaluation with Terry Kilgore, M.D., during which Plaintiff reported pain in her neck, back, and both knees but also reported she had never seen an orthopedic physician, nor had an MRI, pain injections,

or knee surgery. Tr. at 22, 301-304. Plaintiff also reported she had never seen a mental health provider despite her complaints of depression and anxiety. *Id*. During a second visit on March 6, 2014, Dr. Kilgore noted Plaintiff suffers from massive obesity. Tr. at 23, 369-372. Although Plaintiff complained of chronic knee pain, she admitted she had not seen an orthopedic physician for her knees. *Id*.

On December 15, 2013, Plaintiff admitted she only took Ativan for anxiety, but no pain medication. Tr. at 22, 326. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (lack of treatment is an indication of non-disability). She exhibited normal back and extremity examinations. Tr. at 327. She complained of nausea, weakness, and a cough, but denied pain. Tr. at 330. On February 23, 2014, Plaintiff complained of leg pain after not taking Lasix as prescribed for "quit[e] awhile" and an injury four days prior. Tr. 22, 363. She was discharged for peripheral edema with medical noncompliance, and issued twenty pills of Tylenol with Codeine with no refills. Tr. at 364. She followed up on her edema on March 21, 2014, where she still exhibited edema, but otherwise normal back, extremities, and mental examinations, and she was instructed to follow a portion-control diet and increase her activity to thirty minutes a day. Tr. at 383. She again followed up on her edema on April 3, 2014, where she exhibited normal back, extremities, and mental examinations. Tr. at 382.

Plaintiff underwent total knee replacement surgery on April 30, 2014. Tr. at 399-401. On July 11, 2014, Plaintiff followed up after a July 9, 2014, hospital stay for colitis, and stated she was "feeling better overall" although "still weak." Tr. at 467, 480. By November 20, 2014, Plaintiff was "functioning well" and "significantly improved" after left knee replacement surgery pursuant to her treating surgeon. Tr. at 514-515. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citations omitted) (where medication or treatment remedies or controls a

13

medical impairment, such medical impairment is not disabling). In a "Medical Release/Physician's Statement" dated January 27, 2015, Plaintiff's healthcare provider stated she did not have a permanent disability, and the disability was not expected to last six months or more. Tr. at 607. Plaintiff complained of weakness and a swollen throat on April 25, 2015. Tr. at 567. However, she exhibited normal range of motion of her extremities, normal mental examinations, and no motor or sensory deficits. Tr. at 569). *See Falco*, 27 F.3d at 163 (pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling). In sum, the ALJ concluded that the record fails to substantiate Plaintiff's claims of total mental and physical disability, instead showing intermittent treatment and successful knee surgeries. Tr. at 24-25.

In addition to the objective medical evidence, the ALJ must consider: "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other symptoms [ ]; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Wilson v. Astrue*, 2010 WL 1566748, at *10 (N.D. Tex. Mar. 19, 2010) (quoting SSR 96–7p, 1996 WL 374186, at *3); *see also* 20 C.F.R. § 416.929(c)(3).

The ALJ discussed Plaintiff's activities of daily living, noting that she lived alone, although her 13-year-old granddaughter helped her shop and perform household chores. Tr. at 22. *See Reyes v. Sullivan*, 915 F.2d 151, 154 55 (5th Cir. 1990) (appropriate to consider daily activities with other evidence). The ALJ pointed out Plaintiff needed minimal help with

14

personal needs, could talk on the phone, use the computer, drive, and had no problems with memory, concentration, understanding, talking, hearing, or following instructions. Tr. at 20.

Plaintiff argues the ALJ failed to consider her alleged inability to afford treatment in his finding that she was less than fully credible. *See* Dkt. 17 at 13-15. An inability to afford treatment must be corroborated by the objective record. *See Villa*, 895 F.2d at 1024. The ability to afford treatment is relevant only when the treatment in question would remedy an otherwise disabling impairment. *Id*. (no evidence indicated the plaintiff was disabled with or without treatment). Here, the record shows Plaintiff was able to obtain treatment, even so far as two total knee replacements, as discussed above. Furthermore, she has not provided evidence as to what treatment she sought that either she could not afford or was denied access. *See* Dkt. at 13-15. SSR 82-59, 1982 WL 31384 at *4 ("All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored" before an individual may claim she is unable to afford prescribed treatment.); *see also* SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996). Plaintiff lives in government housing and receives food stamps, but the record shows that she sought and received treatment for various complaints such as a sore throat, leg swelling, and two total knee replacements, and that she currently receives indigent care. Tr. at 46, 51. In light of the record, Plaintiff's claim that she was improperly penalized for an alleged inability to afford treatment is simply not credible. Plaintiff fails to show she was unable to receive care, or that the ALJ's credibility determination relied on any supposed lack of treatment that she was unable to afford.

Plaintiff also argues the ALJ should have considered her "exemplary work history" in his credibility analysis. *See* Dkt. 17 at 13-15. However, the ALJ clearly recognized Plaintiff's past jobs and explicitly stated he considered her "prior work record." Tr. at 22, 25. Moreover,

15

the Court notes that Plaintiff fails to explain a 14-month period of no work from May 2004 through June 2005. Tr. at 230. In sum, while her work history was one factor the ALJ may consider, Plaintiff fails to show that the ALJ was required to give this information greater weight when considering the totality of the evidence. The ALJ Decision demonstrates the ALJ properly discussed the appropriate factors when he considered Plaintiff's credibility. *See Clary v. Barnhart*, 214 F. App'x 479 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility."). The ALJ retains the task of evaluating subjective symptoms and determining an individual's credibility. *See Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

Because the ALJ provided sound reasons for discounting Plaintiff's credibility, including the lack of supportive objective medical evidence and Plaintiff's daily activities, Plaintiff's argument fails. The record here demonstrates substantial evidence supports the ALJ's finding that Plaintiff's allegations of complete disability were not entirely credible. *See* Tr. at 25.

## V. CONCLUSION

Based on the foregoing, the Court finds the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

**SIGNED this 28th day of March, 2018.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

16